## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**MUNICIPAL ELECTRIC**
**AUTHORITY OF GEORGIA,**

      **Plaintiff,**

**v.**

**JEA,**

      **Defendant.**

**CIVIL ACTION FILE**

**NO. 1:18-CV-4295-MHC**

## ORDER

This case comes before the Court on Defendant's Motion to Dismiss, or, Alternatively, to Stay [Doc. 5] ("JEA's Mot."), Plaintiff Municipal Electric Authority of Georgia ("MEAG")'s Motion for an Order Enjoining Defendant JEA from Further Prosecuting its Second-Filed Action in Florida [Doc. 14] ("MEAG's Mot."), and Defendant's Request for Judicial Notice [Doc. 6].

## I.    BACKGROUND

MEAG is a public corporation and instrumentality of the State of Georgia that constructs, operates, and maintains electric generation and transmission facilities that benefit forty-nine Georgia communities. Compl. for Decl. J. and Breach of Contract [Doc. 1] ("Compl.") ¶ 1. MEAG has a 22.7% ownership

interest in two additional nuclear power generating units (the "Additional Units") being constructed at the Arthur W. Vogtle Electric Generating Plant ("Plant Vogtle") in Georgia.  See id. ¶¶ 6-7, 15.

In 2007, MEAG determined that it would need only about 9% of the power that the Additional Units would generate so it pursued contracts with other utilities who could purchase the remaining electricity to cover the costs of construction and the first twenty years of operation.  See id. ¶¶ 8, 9.  MEAG sub-divided its interest in the Additional Units into three wholly-owned, special purpose limited liability subsidiaries; the one at issue here is known as "Project J" and represents a 41.175% ownership interest in MEAG's share of the Additional Units.  Id. ¶ 16. MEAG undertook a competitive bidding process and engaged in lengthy contract negotiations with potential purchasers including JEA, Jacksonville Electric Authority, a publicly-owned electric, water, and wastewater utility and an independent agency of the City of Jacksonville, Florida.  Id. ¶¶ 2, 12-13.

On May 12, 2008, MEAG and JEA executed the Power Purchase Agreement [Doc. 1-1] ("PPA") wherein JEA committed to pay 100% of Project J's respective total annual costs, inclusive of all debt service and all variable costs, for the first twenty years.  Id. ¶ 14.  The PPA provides that JEA will pay its share of annual costs "whether or not [Project J] is completed or is operating or operable, and

2

whether or not its [o]utput is suspended, interrupted, interfered with, reduced or curtailed or terminated in whole or in part . . . ." Id. ¶ 19; PPA § 204(g).[1] The PPA also authorizes MEAG to issue bonds and draw upon Department of Energy ("DOE") loans to finance Project J. Compl. ¶ 21; see PPA Article IV. The PPA requires that MEAG and JEA cooperate with each other "by taking all actions necessary to fully effectuate the intent of this Agreement." Compl. ¶ 25; PPA § 1015.

On March 29, 2017, the original construction contractor for the Additional Units, Westinghouse Electric Co. LLC ("Westinghouse"), filed for Chapter 11 bankruptcy. Compl. ¶¶ 28-29. Westinghouse was authorized to reject its contract on July 20, 2017. Id. ¶ 29. In August 2017, Georgia Power Company ("Georgia Power"), as agent for the Additional Unit's co-owners (including MEAG), concluded that it was reasonable and prudent to complete construction. Id. Using Georgia Power's data on the cost to complete construction, MEAG undertook its own analysis and reached a consistent conclusion. Id. MEAG shared its and

---

[1] "In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." SFM Holdings, Ltd. v. Banc of America Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010) (citing Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005)). The PPA is central to MEAG's claims and JEA does not challenge its authenticity.

Georgia Power's analysis with JEA.  Id.  On September 30, 2017, MEAG received

an additional commitment from the DOE with respect to additional financing for

the Additional Units.  Id. ¶ 30.  In December 2017, Westinghouse's parent

corporation, Toshiba Corporation, honored its guaranty of the construction contract

and paid the co-owners $3.68 billion.  Id. ¶¶ 28, 31.  In January 2018, the Georgia

Public Service Commission ("PSC"), after five months of proceedings involving

the intervention of both JEA and MEAG, approved Georgia Power's decision to

complete construction of the Additional Units notwithstanding the delays and

increased costs.  Id. ¶ 32.

Meanwhile, in November 2017, JEA's Board of Directors discussed selling

its assets to a private firm.  Id. ¶ 35.  In late 2017 and early 2018, JEA indicated to

MEAG that it was in favor of discontinuing construction of the Additional Units.

Id. ¶ 36.  In February 2018, JEA wrote a letter to MEAG threatening legal action if

a resolution was not achieved at a February 27, 2018, meeting.  Id.  Shortly

thereafter, however, JEA reaffirmed that it would meet its obligations under the

PPA.  Id.

In August 2018, Georgia Power announced that the budget for construction

of the Additional Units would need to be increased by more than $2 billion.  Id.

¶ 34. Because of a November 2017 amendment to the co-owner's agreement, MEAG's approval was required to continue construction. See id. ¶ 33. On August 17, 2018, JEA informed MEAG that it opposed continued construction of the Additional Units and demanded that MEAG vote not to continue it. See id. ¶ 37. On August 24, 2018, MEAG reassured JEA that it would take its input on the vote, noted that JEA's demand that MEAG vote for cancellation was a demand MEAG breach its loan guarantee agreements with the DOE, and warned that JEA taking its position publicly could "have every deleterious effects" and "profoundly injure" the co-owners, Georgia Power, and the forty-nine Georgia communities purchasing electricity from MEAG. See id. ¶ 38. On September 5, 2018, JEA communicated to the DOE its strong desire that construction of the Additional Units be terminated. Id. ¶ 40. On September 7, 2018, the DOE wrote to MEAG stating that it would "evaluate the impact of JEA's recent statements on MEAG's existing DOE-guaranteed indebtedness within the context of provisions of the existing loan guarantee agreement with MEAG, and likewise would evaluate the impact of JEA's actions on additional indebtedness." Id. ¶ 41.

On September 11, 2018, at 2:42 p.m., MEAG filed the instant Complaint. See Doc. entry 1. MEAG alleges that JEA breached its duty to cooperate in the PPA. Compl. ¶¶ 52-61. MEAG seeks a declaratory judgment and a specific

performance order requiring JEA to cooperate with MEAG in effectuating the intent of the PPA. Id. ¶¶ 43-51, 62-67. On September 11, 2018, at 11:38 p.m., JEA and the City of Jacksonville, Florida filed a complaint [Doc. 6-2] in the Circuit Court of the Fourth Judicial Circuit, in and for Duval County, Florida (the "Circuit Court") against MEAG seeking a declaration that the PPA violates Florida law. On September 17, 2018, JEA filed a petition [Doc. 6-1] seeking a determination that the Federal Energy Regulatory Commission ("FERC") has jurisdiction over the PPA. See Order Den. Pet. for Declaratory Order, Jacksonville Elec. Auth., No. EL18-200-000, 166 FERC ¶ 61, 124 (Feb. 21, 2019) [Doc. 25-1] ("FERC Order") ¶ 1.

On September 24, 2018, MEAG's Board of Directors voted to continue constructing the Additional Units. See Information Regarding Status of Construction of Plant Vogtle Units 3 and 4 (Sept. 27, 2018) [Doc. 6-3]. On October 2, 2018, MEAG removed the later-filed case from the Circuit Court to the United States District Court for the Middle District of Florida. See Def. MEAG's Notice of Removal [Doc. 1], City of Jacksonville v. Mun. Elec. Auth. of Ga., No. 18-cv-1174-BJD-JRK (M.D. Fla. Oct. 2, 2018) (the "Florida Action").[2] On

---

[2] The Court can take judicial notice of facts that are not subject to reasonable dispute because they can accurately and readily be determined from sources whose accuracy cannot reasonably be questioned. FED. R. EVID. 201(b). These sources

October 30, 2018, MEAG moved this Court to enjoin JEA from prosecuting the

Florida Action.  <u>See</u> MEAG's Mot.  On February 21, 2019, FERC denied JEA's

petition and disclaimed jurisdiction over the PPA.  <u>See</u> FERC Order.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a

"short and plain statement of the claim showing that the pleader is entitled to

relief."  Under Federal Rule of Civil Procedure 12(b)(6), a claim will be dismissed

for failure to state a claim upon which relief can be granted if it does not plead

"enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atl. Corp.</u>

---

include state and federal courts and government agencies.  <u>See</u> <u>Long v. Slaton</u>, 508
F.3d 576, 578 n.3 (11th Cir. 2007) (citation omitted) (taking judicial notice of
undisputed facts contained in a report from a state agency); <u>Davis v. Williams
Commc'ns, Inc.</u>, 258 F. Supp. 2d 1348, 1352 (N.D. Ga. 2003) (taking judicial
notice of public records filed with the Georgia PSC); <u>Bryant v. Avado Brands, Inc.</u>,
187 F.3d 1271, 1279-80 (11th Cir. 1999) (taking judicial notice of public records
on file with the Securities and Exchange Commission ("SEC")); <u>United States v.
Rey</u>, 811 F.2d 1453, 1457 (11th Cir. 1987) ("A court may take judicial notice of its
own records and the records of inferior courts.").  Because the contents of JEA's
FERC petition, the FERC Order, the Complaint and Amended Complaint in the
Florida Action, and a document that MEAG filed with the SEC regarding the
September 24, 2018, vote are not subject to reasonable dispute, the Court takes
judicial notice of these documents.  Accordingly, Defendant's Request for Judicial
Notice is **GRANTED IN PART and DENIED IN PART**.  The Court takes
judicial notice of all requested documents except for MEAG's press release.

v. Twombly, 550 U.S. 544, 570 (2007).  The Supreme Court has explained this

standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content
> that allows the court to draw the reasonable inference that the defendant
> is liable for the misconduct alleged.  The plausibility standard is not
> akin to a "probability requirement," but it asks for more than a sheer
> possibility that a defendant has acted unlawfully.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citation omitted).  Thus, a

claim will survive a motion to dismiss only if the factual allegations in the pleading

are "enough to raise a right to relief above the speculative level." Twombly, 550

U.S. at 555.

At the motion to dismiss stage, the court accepts all well-pled facts in the

plaintiff's complaint as true, as well as all reasonable inferences drawn from those

facts.  McGinley v. Houston, 361 F.3d 1328, 1330 (11th Cir. 2004); Lotierzo v.

Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002).  Not only

must the court accept the well-pled allegations as true, but these allegations must

also be construed in the light most favorable to the pleader.  Powell v. Thomas,

643 F.3d 1300, 1302 (11th Cir. 2011).  However, the court need not accept legal

conclusions, nor must it accept as true legal conclusions couched as factual

allegations.  Iqbal, 556 U.S. at 678.  Thus, evaluation of a motion to dismiss

requires the court to assume the veracity of well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

## III.  ANALYSIS

### A.  Request for Declaratory Judgment

JEA contends that MEAG's request for declaratory judgment should be dismissed because, among other reasons, MEAG lacks standing and part of MEAG's request is moot. See Def.'s Mem. of Law in Supp. of its Mot. to Dismiss, or, Alternatively, to Stay [Doc. 5-1] ("JEA's Mem.") at 22-25.

"In order to have constitutional standing, it is axiomatic that a federal action must present a real case or controversy under Article III of the Constitution." Gagliardi v. TJCV Land Trust, 889 F.3d 728, 732 (11th Cir. 2018); see also Muransky v. Godiva Chocolatier, Inc., 905 F.3d 1200, 1207 (11th Cir. 2018) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)) ("Standing is one of the essential components of Article III's case or controversy requirement."). "In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." Walden v. Ctrs. For Disease Control & Prevention, 669 F.3d 1277, 1284 (11th Cir. 2012) (citation omitted). "The plaintiff

9

must allege facts from which the continuation of the dispute may be reasonably inferred.  Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." Emory v. Peeler, 756 F.2d 1547, 1551-52 (11th Cir. 1985) (citations omitted).

"In order for there to be a real case or controversy, however, the issues in play at the outset must remain alive.  Mootness doctrine ensures that a justiciable case or controversy is present 'at all stages of review.'" Gagliardi, 889 F.3d at 733 (citations omitted).  "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs., 225 F.3d 1208, 1216 (11th Cir. 2000) (internal punctuation and citation omitted).  Federal courts specifically lack subject matter jurisdiction where intervening events in an action render the claims moot.  United States v. Shenberg, 90 F.3d 438, 440 (11th Cir. 1996); see also Gagliardi, 889 F3d at 735 (citations omitted) ("An otherwise nonjusticiable case cannot be resurrected simply by seeking declaratory relief.  As with any federal suit, when a party seeks declaratory relief, the courts are required to examine whether there is an 'actual controversy,' without which a declaration may not issue.").

MEAG seeks a declaration that: (1) MEAG has performed under the PPA, (2) neither a "yes" or "no" vote on continuing construction of the Additional Units would be a breach of the PPA, (3) the entirety of the PPA is fully enforceable against JEA and will continue to be regardless of the vote, and (4) JEA's failure to cooperate is in breach of the PPA. See Compl. ¶¶ 51, 61. First, there is no claim in this case that MEAG, the plaintiff, did not perform under the PPA.[3] "A declaratory judgment action may not be made the medium for securing an advisory opinion in a controversy which has not arisen." State St. Bank & Tr. Co. v. Canal Ins. Co., No. 1:14-CV-2080-AT, 2014 WL 12360078, at *6 (N.D. Ga. Dec. 1, 2014) (internal quotations omitted) (citing Coffman v. Breeze Corps., Inc., 323 U.S. 316, 324 (1945); see also Ashcroft v. Mattis, 431 U.S. 171, 171 (1977) (internal quotations and citation omitted) ("For a declaratory judgment to issue, there must be a dispute which calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts."); Rivell v. Private Health Care Sys., Inc., 887 F. Supp. 2d 1277, 1293 (S.D. Ga. 2012)) (same). Second, on September 24, 2018, the co-owners voted to continue construction, so whether a "yes" or "no" vote would have been a breach

---

[3] Likewise, there is no claim in the Florida Action that MEAG has failed to perform. See Am. Compl. for Declaratory J. [Florida Action Doc. 22].

of the PPA is moot.  See Fla. Ass'n of Rehab. Facilities, 225 F.3d at 1217 (citation omitted) ("When events subsequent to the commencement of a lawsuit create a situation in which the court can no longer give the plaintiff meaningful relief, the case is moot and must be dismissed.").  There is no live claim that MEAG's vote was a breach.

Third, a declaration that JEA's failure to cooperate breached the PPA cannot be brought as a declaratory judgment action.

> Whether a contract was adequately performed is unrelated to the purpose of the Declaratory Judgment Act: "A petition seeking declaratory judgment that alleges breach of duties and obligations under the terms of a contract and asks the court to declare those terms breached is nothing more than a petition claiming breach of contract.  It thus provides an adequate remedy at law, and a decision on the merits of the breach of contract claim would render the defendant's request for declaratory judgment moot or redundant."

State St. Bank & Tr. Co., 2014 WL 12360078, at *6 (quoting Eisenberg v. Standard Ins. Co., No. 09-80199-CIV, 2009 WL 3667086, at *2 (S.D. Fla. Oct. 26, 2009)).  In Count II, MEAG alleges that JEA's failure to cooperate breached the PPA.  See Compl. ¶¶ 52-61.  The Court will not entertain a declaratory judgment action on a breach of contract claim properly raised in another count of the Complaint.  See St. Bank & Tr. Co., 2014 WL 12360078, at *6; see also, e.g., Garcia v. Scottsdale Ins. Co., No. 18-20509-Civ-Scola, 2018 WL 3432702, at *3 (S.D. Fla. July 16, 2018) ("[T]he [c]ourt finds that Garcia's claim for declaratory

12

judgment covers the same dispute as his breach-of-contract claim.  This [c]ourt has previously found that it should not hear claims for declaratory judgment on issues which are properly raised in other counts.").

Fourth, JEA contends that MEAG's requested declaration that the PPA is and will continue to be enforceable would be prospective and hypothetical.  JEA's Mem. at 24.  JEA notes that MEAG "has not identified some ambiguity in the PPA that the Court has jurisdiction to resolve" and has not pled "any injury in fact with traceable causation to JEA that can be conclusively addressed or resolved by this Court . . . ."  Id.  MEAG responds that its Complaint alleges facts that show a substantial likelihood that it will suffer future harm.  See Pl. MEAG's Opp'n to Def.'s Mot. to Dismiss or, Alternatively, to Stay [Doc. 10] ("MEAG's Opp'n") at 24.

A plaintiff must have standing at the time the lawsuit is filed.  See, e.g., Cook v. Bennett, 792 F.3d 1294, 1299 n.3 (11th Cir. 2015) (citing Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 830 (1989)) ("[S]tanding is measured at the time a lawsuit is filed . . . ."); Am. Civil Liberties Union of Fla., Inc. v. Dixie Cty., Fla., 690 F.3d 1244, 1247 n.5 (11th Cir. 2012) (citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180 (2000) ("[W]e have an obligation to assure ourselves that [the plaintiff] had Article III standing at the

outset of the litigation.")) ("For jurisdiction, standing had to exist when the suit was filed (not arise later).  It is not enough for Plaintiff to try to establish, in terms of shifting reality, the requirements of standing as the case progresses through the federal courts.").  MEAG's Complaint alleges no "real and immediate" controversy that creates a "definite, rather than speculative[,] threat of future injury."  See Emory, 756 F.2d at 1551-52 (11th Cir. 1985) (citations omitted).  The Complaint alleges that JEA's demand that MEAG vote against continuing construction of the Additional Units, and JEA's communication with the DOE, "have already had their intended effect: to interfere with and destabilize MEAG[]'s access to credit in order to force MEAG[]'s hand in the upcoming vote."  Compl. ¶ 42.  As noted above, the vote already has occurred.  "Injury in the past . . . does not support a finding of an Article III case or controversy when the only relief sought is a declaratory judgment."  Malowney v. Fed. Collection Deposit Grp., 193 F.3d 1342, 1346 (11th Cir. 1999) (citing Emory, 756 F.2d at 1552).  Any "imminent threat" is over: MEAG's hand in the vote can no longer be forced.

Furthermore, the Complaint alleges that JEA previously "reaffirmed that it would meet its obligation under the PPA."  Compl. ¶ 36.  JEA made this reaffirmation *after* writing its February 2018 letter threatening legal action.  See id. The Complaint also alleges that in bond validation proceedings before the Superior

Court of Fulton County, "JEA filed an answer in which JEA admitted to the full

and unconditional enforceability of the PPA, as amended and revised." Id.

¶¶ 26-27.  The Complaint does not allege that JEA failed to make any of its

payments under the PPA.  It does not allege that JEA threatened legal action after

reaffirming that it would meets its PPA obligations.  It does not allege facts

indicating that JEA was likely to file a lawsuit.  The Court does not find that

DOE's letter stating that it would "evaluate the impact" of JEA's statements on

MEAG's existing and additional indebtedness created a definite threat of future

injury.  Rather, the Court finds that any threat of future injury at the time the

Complaint was filed was speculative.  Accordingly, MEAG lacked standing to

request a declaratory judgment on whether the PPA is and will continue to be

enforceable.  MEAG's request for a declaratory judgment is **DISMISSED**

**WITHOUT PREJUDICE**.[4]  See Stalley ex rel. U.S. v. Orlando Regional

---

[4] In its response to JEA's Motion to Dismiss, MEAG requests "in the event the
Court determines there is lack of standing" leave to amend its Complaint to
"include, *inter alia*, the fact that rating agency Moody's downgraded both JEA's
credit rating and MEAG's bonds related to Project J after JEA filed the [Florida]
Action due to the uncertainty of the debt's security because of the lawsuit and
concerns about the willingness of JEA to honor its obligations."  MEAG's Opp'n
at 25 n.16.  This amendment would be futile because it would not establish that
MEAG had standing at the time it filed the Complaint—before JEA filed the
Florida Action.  MEAG is free to file a new lawsuit but doing so may implicate the

Healthcare Sys., Inc., 524 F.3d 1229, 1232 (11th Cir. 2008) (citations omitted)

("Because standing is jurisdictional, a dismissal for lack of standing has the same

effect as a dismissal for lack of subject matter jurisdiction under FED. R. CIV. P.

12(b)(1). A dismissal for lack of subject matter jurisdiction is not a judgment on

the merits and is entered without prejudice.").

### B.    Breach of Contract Claim

MEAG alleges that JEA breached Section 1015 of the PPA, see Compl.

¶¶ 52-61, which provides that:

> [t]he Parties shall cooperate with each other and with each other's
> employees and agents by taking all actions necessary to fully effectuate
> the intent of this Agreement, including providing upon reasonable
> request to each other all information and documents relevant to the
> purposes of this Agreement and making their employees and agents
> available in connection with any of the matters addressed in this
> Agreement.

PPA § 1015. MEAG requests specific performance as a remedy for this alleged

breach. Compl. ¶¶ 61-67. JEA contends that MEAG's breach of contract claim

fails as a matter of law because "breach of a cooperation clause is not an

affirmative cause of action, but rather a defense to a breach of contract claim."

JEA's Mem. at 18; see Trade AM Int'l v. Cincinnati Ins. Co., No. 1:08-CV-3371-

---

first-filed rule since the Florida Action seeks a declaration that the PPA is not
enforceable.

GET, 2010 WL 11506595, at *9 (N.D. Ga. June 4, 2010) ("[T]he court finds that defendant fails to point the court to sufficient evidence to create a question of fact as to its affirmative defense of failure to cooperate.").

Section 1003 of the PPA states that "[t]his Agreement shall be governed by, and construed in accordance with, the laws of the State of Georgia, applied without giving effect to principles of conflicts of laws or choice of law that would require the application of the law of any other state." PPA § 1003. This express provision requiring cooperation is the equivalent of the implied covenant of good faith. See Travel Agency Grp., Inc. v. Henderson Mill Travel, Inc., 193 Ga. App. 882, 887 (1989) (citation omitted) ("The paragraph [in the contract] explicitly and clearly stated that it was purchaser's responsibility to obtain the transfer and that the seller and Uzialko would 'reasonably cooperate' to achieve this. Such is the law even without an express provision, as good faith performance is implicit in every contract."). However, Georgia law does not recognize an independent cause of action for breach of the covenant of good faith and fair dealing in contracts, whether governed by the UCC or by common law:

> In contracts governed by the UCC, the failure to act in good faith in performing a contract does not create an independent cause of action. Although we have not expressly ruled whether the common law requirement of good faith and fair dealing in the performance of a contract creates an independent cause of action apart from breach of contract, the Eleventh Circuit Court of Appeals has examined the

17

> question and ruled that Georgia law would not recognize such an independent cause of action. We agree. The implied covenant of good faith modifies, and becomes part of, the provisions of the contract itself. As such, the covenant is not independent of the contract.

Stuart Enter. Int'l, Inc. v. Peykan, Inc., 252 Ga. App. 231, 234 (2001) (citations omitted); see also Alan's of Atlanta, Inc. v. Minolta Corp., 903 F.2d 1414, 1429 (11th Cir. 1990) (citations omitted) ("[T]he [implied] 'covenant' [of good faith and fair dealing] is not an independent contract term. It is a doctrine that modifies the meaning of all explicit terms in a contract, preventing a breach of those explicit terms *de facto* when performance is maintained *de jure*.").

Since "[t]here is no independent cause of action for violation of the covenant apart from breach of an express term of the contract. . . . the covenant of good faith and fair dealing is not an undertaking that can be breached apart from contract terms." Hardy v. Wells Fargo Bank N.A., No. 1:12-CV-851-SCJ-LTW, 2013 WL 12014436, at *8 (N.D. Ga. Jan. 31, 2013) (internal quotations omitted) (citing Morrell v. Wellstar Health Sys., Inc., 280 Ga. App. 1, 5 (2006); Stuart, 252 Ga. App. at 234 (2001)), report and recommendation adopted by 2013 WL 11975139 (N.D. Ga. Feb. 21, 2013); see also Metellis v. Bank of Am., N.A., No. 5:15-CV-183-LJA, 2016 WL 7985330, at *3 (M.D. Ga. Mar. 28, 2016) (citations omitted) ("Georgia law does not recognize an independent cause of action based on the covenant of good faith and fair dealing.").

Although MEAG contends that JEA took several actions that are hindering

MEAG's ability to continue to borrow under the DOE program, effectuate the

intent of the PPA, and comply with the terms of DOE loans, see Compl. ¶¶ 57-58,

MEAG does not assert that JEA breached any contractual provision beyond the

cooperation clause.  See Compl. ¶¶ 52-61.[5]  "Although '[e]very contract implies a

covenant of good faith and fair dealing in the contract's performance and

enforcement, . . . the covenant cannot be breached apart from the contract

provisions it modifies and therefore cannot provide an independent basis for

liability.'"  Mbigi v. Wells Fargo Home Mortg., 336 Ga. App. 316, 327 (2016)

(emphasis added) (citing OnBrand Media v. Codex Consulting, Inc., 301 Ga. App.

141, 147 (2009)) (holding that trial court erred in dismissing claim for breach of

the implied duty of good faith and dealing in a wrongful foreclosure action because

complaint alleged that bank failed to perform other actions required by the

contract); see also DJ Mortg., LLC v. Synovus Bank, 325 Ga. App. 382, 395-96

(2013) (stating that bank had a duty to diligently and in good faith seek to comply

with the contractual provision that it endeavor to review plaintiff's requests for

---

[5] The only other substantive provision of the PPA referenced in Count II of the
Complaint is Section 1107, which contains MEAG's agreement to comply with
DOE loan guarantee agreements and loan documents.  See Compl. ¶ 54; PPA
§ 1017.

advances within the specified time frame); <u>Johnson v. Citimortgage, Inc.</u>, 351 F.

Supp. 2d 1368, 1381 (N.D. Ga. Dec. 28, 2004) (declining to dismiss breach of

covenant of good faith and fair dealing claim because plaintiff did not assert this

claim "separate from a breach of contract claim" because plaintiff alleged that

defendant breached other contract terms "by mismanaging [p]laintiff's account,

failing to respond to his inquiries, and inaccurately reporting mortgage arrearages

to credit reporting agencies . . . .").

MEAG contends that <u>S. Bus. Machines of Savannah, Inc. v. Norwest Fin.

Leasing, Inc.</u>, 194 Ga. App. 258 (1990), holds that a party breaches its "contractual

duty to cooperate" if it contacts a third party in a manner that potentially induces

the third party to default. MEAG's Opp'n at 21. In that case, the Georgia Court of

Appeals found that the trial court erred in granting summary judgment on a

*counterclaim* for breach of covenant of bad faith. <u>Norwest</u>, 194 Ga. App. at 258.

Plaintiff sued for breach of an assignment agreement, and defendant

counterclaimed for breach of the duty of good faith. <u>Id.</u> at 254. The Court of

Appeals found that "[t]he <u>provisions in the assignment contract</u>, purporting to

authorize appellee to contact lessees directly and to collect payment from them, did

not expressly or impliedly authorize appellee <u>to exercise this power in a manner

constituting a lack of good faith</u>." <u>Id.</u> at 257 (emphasis added). In this case,

20

MEAG alleges only a breach of the duty to cooperate and not a breach of any other provisions of the PPA, which is distinguishable from <u>Norwest</u> where the defendant counterclaimed that plaintiff breached the duty to cooperate in performing another provision of the contract.

The other relevant cases applying Georgia law that MEAG cites also involved alleged breaches of other contractual provisions. <u>See</u> <u>West v. Koufman</u>, 259 Ga. 505, 505 (1989) (affirming trial court's interlocutory injunction restraining foreclosure because the holder of the security deed's breach of the implied duty of good faith and fair dealing "might preclude him from insisting on [the purchaser's] strict compliance with the default provision in the deed"); <u>Travel Agency Grp.</u>, 193 Ga. App. at 885-87 (affirming trial court's refusal to give jury charge regarding construing ambiguous contract terms because there was no ambiguity requiring jury resolution, but rather a factual dispute whether seller complied with a contractual provision "explicitly and clearly stated that it was purchaser's responsibility to obtain the transfer and that the seller . . . would 'reasonably cooperate' to achieve this."); <u>Times-Journal, Inc. v. Jonquil Broad. Co.</u>, 226 Ga. 673, 677 (1970) (reversing trial court's denial of default judgment for plaintiffs who sought to enjoin defendants from failing to cooperate in seeking Federal Communications Commission approval of a contract to purchase stock in a radio

station where plaintiffs alleged that defendants anticipatorily breached the contract).

Because MEAG asserts an independent cause of action for breach of the duty to cooperate, rather than a breach of any other contractual provision, MEAG's breach of contract claim based upon a breach of the cooperation clause in the PPA is **DISMISSED WITH PREJUDICE.**[6]

## C.    Request for Injunction Barring the Florida Action

MEAG requests an order from this Court enjoining JEA from further prosecuting the Florida Action.  MEAG's Mot. at 1.  MEAG contends that this Court should apply the first-filed rule and hear the controversy between the parties. Id. at 8-16.  However, because this Court dismisses all of MEAG's claims, there is

---

[6] MEAG's claim for specific performance therefore fails as a matter of law. Specific performance is a remedy for breach of contract permitted "whenever the damages recoverable at law would not be an adequate compensation for nonperformance." O.C.G.A. § 23-2-130.  Because MEAG's claim for breach of the duty to cooperate fails, no damages are recoverable, see O.C.G.A. § 13-6-1, and specific performance is not available.  See also Bates v. JPMorgan Chase Bank, NA, 768 F.3d 1126, 1130 (11th Cir. 2014) (emphasis added) (quoting Norton v. Budget Rent A Car Sys., Inc., 307 Ga. App. 501, 502 (2010)) ("The elements of a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages . . . .").  Accordingly, Count III is also **DISMISSED WITH PREJUDICE**.

no longer any competing or parallel litigation to the Florida Action in this Court.

MEAG's request is therefore **DENIED AS MOOT**.

## IV.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendant's Motion

to Dismiss [Doc. 5] is **GRANTED**.  Plaintiff's claim for declaratory judgment is

**DISMISSED WITHOUT PREJUDICE** and its claims for breach of contract

based upon a breach of the cooperation clause in the PPA and for specific

performance are **DISMISSED WITH PREJUDICE.**

It is further **ORDERED** that Plaintiff Municipal Electric Authority of

Georgia's Motion for an Order Enjoining Defendant JEA from Further Prosecuting

its Second-Filed Action in Florida [Doc. 14] is **DENIED AS MOOT**.

It is further **ORDERED** that Defendant's Request for Judicial Notice [Doc.

6] is **GRANTED IN PART and DENIED IN PART**.  The Court takes judicial

notice of all requested documents except for MEAG's press release.

The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED** this 8th day of April, 2019.


_____
MARK H. COHEN
United States District Judge

23