# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| MUNICIPAL ELECTRIC AUTHORITY OF GEORGIA,<br><br>       Plaintiff,<br><br>  v.<br><br>JEA,<br><br>       Defendant. | Case No. 1:18-cv-4295-MHC |

**REPLY SUPPORTING PLAINTIFF'S *EMERGENCY* MOTION TO RE-OPEN CASE, AND FOR AN INJUNCTION PENDING APPEAL**

JEA's opposition to MEAG's request for an injunction pending appeal primarily attempts to throw roadblocks in the way of this Court reaching the actual issue at the heart of MEAG's motion—the first-filed rule. JEA first says this Court lacks jurisdiction. It doesn't. Then JEA says that the traditional injunction factors apply even when the request is based on the first-filed rule. They don't. When JEA finally addresses the first-filed rule, it offers little resistance to its application here. The harms JEA claims would befall it if the injunction is granted are not harms, and its protest that this Court was not initially seized of jurisdiction is meritless. Even if this Court applies the traditional injunctive factors, an injunction should still issue. MEAG is likely to prevail on appeal, and the equities favor an injunction.

## I. This Courts Has Jurisdiction to Consider MEAG's Motion for an Injunction.

JEA begins by arguing that this Court lacks jurisdiction to consider MEAG's requested injunction. ECF 43 at 3-5 ("Opp."). This is an odd argument given the procedural posture of this case. MEAG first sought relief in the Eleventh Circuit, which the Eleventh Circuit denied "without prejudice to [MEAG] first seeking such relief in the district court," ECF 37-3 at 3, after JEA opposed the motion on the basis that MEAG had not first sought relief in the district court. The Eleventh Circuit would not have sent this matter back to this Court to decide in the first instance if this Court lacked jurisdiction to consider the request.

This Court has jurisdiction. As JEA recognizes, Opp. 3-4, district courts may grant injunctions while an appeal is pending. *See* Fed. R. Civ. P. 62(d). JEA nonetheless contends that the Court lacks jurisdiction because such an injunction must preserve the status quo, and MEAG is apparently seeking "just the opposite." Opp. 4. That is wrong. MEAG is asking the Court to enjoin JEA from *further* prosecuting its action pending resolution of the appeal. In other words, MEAG requests that the Court freeze the parties where they currently are. The injunction would function as a stay of JEA's parallel action; the parties would be left in their exact current position until the Eleventh Circuit resolves the appeal. And the Eleventh Circuit has explained that a stay pending appeal "maintain[s] the status quo." *Chalfonte Condo. Apartment Ass'n,*

1

*Inc. v. QBE Ins. Corp.*, 695 F.3d 1215, 1232 (11th Cir. 2012). JEA contends this is not so because the injunction would enjoin it "from exercising a right it currently enjoys." Opp. 5. That is what an injunction always does. MEAG's requested injunction would preserve the status quo, and so this Court has jurisdiction.

## II. MEAG Satisfies the Requirements for an Injunction.

### A. <u>JEA misstates the governing standard, under which MEAG prevails.</u>

JEA waits until the end of its motion before even addressing the first-filed rule—the issue at the core of MEAG's request for an injunction. JEA's argument misreads relevant cases and offers no compelling reason for this Court to deny the motion.

JEA does not dispute that the Eleventh Circuit has held that the first-filed rule "creates a 'strong presumption' in favor of 'the forum of the first-filed suit' whenever 'two actions involving overlapping issues and parties are pending in two federal courts.'" Mot. 7 (quoting *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005)). Instead, JEA accuses MEAG of adopting an "overbroad" reading of *Manuel*. Opp. 22. But JEA does not contest that there are indeed two actions involving overlapping issues and parties in two federal courts, nor does it explain why this Court should not interpret this binding precedent to mean what it says. The best JEA can offer is that "there is no *current* risk of duplicative litigation" but only a "contingent risk if MEAG succeeds on appeal." *Id.* at 22-23. This is a distinction without a difference. The risk of duplicative litigation is often contingent on the success of the

party invoking the rule—after all, this Court denied MEAG's original motion as moot because it had not succeeded on the motion to dismiss. It remains the case that if the Florida court proceeds while this case is on appeal it will waste judicial resources and create a tangled procedural morass should the Eleventh Circuit remand this case.

The presumption favoring the first-filed rule is strong in this Circuit, and so JEA grasps for out-of-circuit cases for support. *See* Opp. 22. Here, it is JEA adopting an "overbroad" reading of cases from the Third and Sixth Circuits saying that the first-filed rule "promotes comity among federal courts of equal rank." *EEOC v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988), *aff'd on other grounds*, 493 U.S. 182 (1990); *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007). In both cases, the appellate courts reviewed a district court's decision to decline to enjoin a party from proceeding in another district court. *See EEOC*, 850 F.2d at 971; *Certified Restoration Dry Cleaning Network*, 511 F.3d at 551. Neither court held, despite JEA's implication, that a district court cannot enjoin a party from proceeding with a parallel action while the first-filed case is on appeal. In any event, it is hard to see why JEA thinks these cases help. MEAG is currently asking this Court to enjoin JEA from proceeding with its parallel, second-filed action in another district court of "equal rank" and is doing so to avoid duplicative litigation and thus "promote comity" between those two courts by avoiding conflicting results.

JEA next claims that "[i]t is well-settled that the standard courts apply to a Rule 62 motion for a stay or injunction pending appeal is the traditional injunctive relief standard."  Opp. 23.  But Rule 62 is a procedural rule, not a substantive one that mandates any specific test.  While the typical standards for injunctive relief may apply to a movant seeking a typical injunction, courts do not subject "orders enjoining a party from proceeding with a duplicative, second-filed lawsuit in another forum[] … to the [traditional] standards for injunctive relief." *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1004 (8th Cir. 1993); *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1463 (Fed. Cir. 1990).  Instead, as MEAG explained in its motion (at 7), the first-filed rule creates a "strong presumption" in favor of the party that filed first.  *Manuel*, 430 F.3d at 1135.

On the merits, JEA begins with the misguided assertion that this court was not "initially seized of jurisdiction" because it held that MEAG lacked standing to pursue its claim for declaratory relief.  Opp. 24.  That is wrong for multiple reasons.  First, MEAG undisputedly had standing for the claim that JEA breached the PPA, and the claim for declaratory relief that the co-owners vote would not violate the PPA.  The Court dismissed the breach claim on the merits of the pleadings, not standing.  As to MEAG's declaratory relief claim that the co-owners vote would not violate the PPA, this Court did *not* hold that MEAG lacked standing to bring that claim when the complaint was filed.  Rather, the Court held that the claim became moot.  MEAG

4

disagrees for the reasons discussed below (at 10-11), but regardless, this Court was initially seized of jurisdiction and is thus the first-filed forum.

Second, and in any event, for reasons explained below (at 11-13), MEAG should be given leave to file an amended or supplemented complaint, and that complaint would relate back to the original, re-establishing this Court's jurisdiction and confirming that this Court is the first-filed forum. *See Stevens v. Premier Cruises, Inc.*, 215 F.3d 1237, 1239 (11th Cir. 2000) (holding that an amended complaint would not be futile even though the "[p]laintiff's original complaint failed to allege a genuine threat of future injury" because the "proffered amended complaint would have cured the defect about standing"). JEA's argument that the first-filed rule does not apply because this Court was not initially seized of jurisdiction is thus meritless.[1]

JEA concludes by arguing that this Court should not apply the first-filed rule because the Florida court should remand under the *Brillhart/Wilton* abstention doctrine. Opp. 24-25. MEAG has explained ad nauseum why that doctrine is inapplicable—a federal court should not decline to exercise jurisdiction out of deference to a parallel state action when there *is no* parallel state action. *See, e.g.*, ECF 10 at 12-19.

---

[1] JEA suggests in a footnote that it may later—not now—argue that an exception to the first-filed rule for anticipatory lawsuits applies if the Eleventh Circuit concludes MEAG has standing. Opp. 25. MEAG explained in its motion (at 8) why its complaint was not anticipatory. If the Eleventh Circuit agrees MEAG had standing, then MEAG had already suffered a constitutionally cognizable injury, further undermining any argument that the complaint was anticipatory.

Regardless, JEA cites no case, and MEAG is aware of none, holding that a request for abstention in the second-filed case is an exception to the first-filed rule.

Because JEA has failed to rebut the "strong presumption" in favor of the first-filed rule, this Court should enjoin JEA from further prosecuting the Florida Action while this case is on appeal.

### B. MEAG also prevails under the standard JEA proposes.

Even if this Court were to apply the traditional injunction factors, it should nevertheless enjoin JEA from proceeding in Florida while the appeal is pending. MEAG is likely to prevail on the merits, and the equities favor granting an injunction.

#### 1. MEAG is likely to prevail on the merits.

As explained in the motion (at 10), MEAG recognizes that this Court has already dismissed MEAG's complaint. MEAG respectfully disagrees with the Court's analysis and believes that it has, at least, shown a substantial case on the merits. JEA's arguments to the contrary largely ignore the injuries MEAG suffered.

##### a. MEAG had standing to pursue its claim for declaratory judgment.

MEAG had standing to seek declaratory relief that the PPA was valid and enforceable against JEA, that MEAG had not breached the PPA by voting to continue the project, and that MEAG had performed under the PPA. Mot. 11. As explained in the motion, JEA's pre-litigation conduct imposed concrete harm on MEAG by impairing its access to construction financing and by threatening imminent litigation.

***The PPA Is Valid.*** MEAG had standing to seek a declaratory judgment that the PPA was valid and enforceable. As the motion explains (at 11-12), JEA's repeated threats to exit the PPA caused immediate financial harm. JEA's actions forced MEAG to "expend money, time, and attention to deal with" the uncertainty surrounding the continued vitality of the project. Compl. ¶ 51. That alone is a cognizable injury. *Wells v. Willow Lake Estates, Inc.*, 390 F. App'x 956, 959 (11th Cir. 2010) (concluding that a plaintiff "forced to spend time and money" because of defendant's wrongful act had sustained an injury under Article III). And by advertising to the market that the sole party responsible for paying the bondholders and the Department of Energy planned to evade those obligations, JEA "interfere[d] with and destabilize[d] MEAG Power's access to credit." Compl. ¶ 42. That too is a cognizable injury. *See, e.g.*, *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1280 (11th Cir. 2017) (recognizing a "credit score drop[] … as a result of the challenged conduct" as a constitutionally cognizable injury).

JEA does not directly respond to this, choosing instead to accuse MEAG of "incorrectly characterize[ing] JEA's pre-litigation statements, the DOE's statements, and the allegations in its own Complaint." Opp. 15. Not only is JEA wrong, its argument is irrelevant. However JEA thinks its own conduct and the DOE's statements should have been construed, all that matters for purposes of standing is that they forced MEAG to expend time and money to deal with them or that the market interpreted them

7

in a way that imposed financial harm on MEAG, either of which creates standing. MEAG has alleged both and JEA does not dispute that either injury occurred.[2]

***Performance and breach under the PPA.***  JEA argues that MEAG was seeking an advisory opinion because "there is no claim in this case or the Florida Action that MEAG did not perform under the PPA."  Opp. 13.  But the question is not whether there is currently a claim against MEAG for lack of performance but whether MEAG reasonably feared such a claim at the time it filed the complaint.  JEA tacitly concedes that such fear existed by recognizing that MEAG's complaint alleged that JEA had "stated by letter that it was JEA's position that a vote to continue 'would violate MEAG's obligations' to JEA."  *Id.* (quoting Compl. ¶ 37).  Even now, while protesting that it has not yet asserted a claim for breach of the PPA, JEA conspicuously does *not* waive its right or disclaim its intent to do so based on MEAG's past conduct, and the statute of limitations has not expired.  Equally conspicuous is JEA's failure to respond to MEAG's argument that this "Court was mistaken when it stated that MEAG did not allege that JEA threatened legal action after reaffirming that it would meet its PPA obligations" in 2017.  Mot. 13 (quotation marks omitted).  JEA's silence is telling.

---

[2] In a footnote, JEA suggests that a March 2019 loan from the DOE shows that MEAG did not suffer any harm.  Opp. 16.  That is both irrelevant and wrong.  This new argument does not speak to the harm MEAG suffered at the time of the complaint in September 2018.  Nor does this new loan repair any threat to the credit of the bonds or compensate MEAG for the time and money spent dealing with JEA's conduct.  Indeed, MEAG was forced to spend significant time and money explaining this litigation in order to receive that loan.

8

The undisputed facts of the case are thus that JEA threatened to treat certain conduct by MEAG as a breach of the PPA, MEAG engaged in that conduct, and JEA refuses to walk back its threat. That gives MEAG standing because "[t]he threat of litigation, if specific and concrete, can indeed establish a controversy upon which declaratory judgment can be based." *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 897 (5th Cir. 2000); Wright & Miller, 10B Fed. Prac. & Proc. Civ. § 2751 (4th ed.) (explaining that the Declaratory Judgment Act allows "potential defendants" to seek relief in the face of "impending litigation").

Alternatively, JEA relies on two out-of-circuit district court cases for the proposition that MEAG could not use the Declaratory Judgment Act to anticipate an affirmative defense. Opp. 13. That is ironic given that JEA has filed a declaratory judgment action in Florida arguing that the contract is void—which is an affirmative defense. In any event, there is no support for that argument in the context of a breach-of-contract claim, which neither of those cases were addressing. The Eleventh Circuit has routinely considered the merits of claims seeking declaratory judgment that a party was not in breach, which it would not do if those parties lacked standing. *E.g.*, *St. Paul Fire & Marine Ins. Co. v. Lago Canyon, Inc.*, 561 F.3d 1181, 1183 (11th Cir. 2009); *Lideres Entm't Grp., Inc. v. Valdovinos*, 254 F. App'x 798, 798 (11th Cir. 2007). And the Supreme Court has expressly allowed a party to seek declaratory relief on an

affirmative defense—i.e., that a patent "is invalid, unenforceable, or not infringed." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 137 (2007).

*Mootness.* JEA's claim for a declaratory judgment that the co-owner vote would not violate the PPA was not moot. As MEAG explained in the motion (at 13), MEAG's vote to continue the project did not eliminate its injury (the threat of litigation) but rather intensified it. JEA's response—that "MEAG ignores that a court may not grant declaratory relief concerning past injuries based on past conduct," Opp. 14-15—is non-responsive. MEAG's injury is *not* in the past. The injury is the threat of litigation from JEA based on JEA's unequivocal statement that it would view MEAG's vote to continue the project as a breach of the PPA. That injury was present at the time of the complaint, it was present following the vote, and it remains present now. JEA has refused to disclaim any claim for breach based on the vote. Until it does so, MEAG has standing for this claim.

    b. <u>MEAG should be granted leave to amend its complaint.</u>

JEA also argues that MEAG's request to amend the complaint was "not properly presented and would be futile." Opp. 16. The first argument is both irrelevant and forfeited. Following MEAG's request to amend, JEA filed a reply brief that did not object to either the content or form of MEAG's request. This Court considered the merits of MEAG's request, and JEA's time to object to its form has come and gone.

10

Regardless, while JEA cites cases that *allow* a district court to deny leave to amend when the request is made in a motion to dismiss, Opp. 16-17, no case holds that a court *must* conclude that it lacks the discretion to consider the request. Indeed, as MEAG explained in its motion, "where a court and the opposing party are aware that a jurisdictional defect was cured after a complaint was filed, [the Supreme Court has held] that a court may 'treat the pleadings as properly supplemented' *even in the absence of a formal supplemental pleading*." Mot. 15 (quoting *Mathews v. Diaz*, 426 U.S. 67, 75 & n.9 (1976)).

JEA is also wrong that MEAG's request would have been futile. This Court already suggested that MEAG would have standing if allowed to amend. *See* ECF 28 at 15 n.4. JEA's objection is that MEAG's amended complaint would not relate back to the original complaint, Opp. 17, and so cannot cure any standing defect. That is wrong for several reasons. Most obviously, MEAG's complaint would relate back because MEAG undisputedly had standing to bring its claim for breach of contract. Accordingly, any additional claims that MEAG brought after that time relate back to the original complaint. JEA responds by complaining that MEAG's breach claim was dismissed for failure to state a claim and that "[a] party cannot hinge its standing for declaratory relief on its inclusion of a nonrecognized breach of contract cause of action in the Complaint." Opp. 18 n.16. JEA offers no authority or explanation for the

11

remarkable proposition that a party may not add related claims to a complaint just because the court may dismiss the original complaint under Rule 12(b)(6). That would undermine the whole point of relation back, which assumes that some (or all) of the initially pleaded claims will fail and so new claims or events need to be added in a subsequent pleading that is considered filed as of the earlier filed complaint. *See Travelers Ins. Co. v. Brown*, 338 F.2d 229, 234 (5th Cir. 1964) (characterizing Rule 15(c) as "permissive" and noting that "even new defendants and new theories of recovery will be allowed"). In any event, as explained above (at 8-10), it is undisputed that MEAG had standing at the time it filed the lawsuit to seek declaratory relief that the co-owners' vote did not breach the PPA. Even if that claim became moot, MEAG still had standing at the time of the complaint and thus an amendment could relate back.

JEA also argues that there is a circuit split over "whether a party may amend or supplement a complaint with post-filing facts to establish standing that relates back to the date of commencement of the lawsuit," and the Eleventh Circuit "has not yet ruled on this exact issue." Opp. at 17. Not only does the great weight of authority favor MEAG, *see* Mot. 15-16, but the Eleventh Circuit has held that when a "[p]laintiff's original complaint failed to allege a genuine threat of future injury," amendment would not be futile because the "proffered amended complaint would have cured the defect about standing." *Stevens*, 215 at 1239. This Court should follow *Stevens*.

12

### c. MEAG is likely to prevail on its breach of contract claim.

MEAG is also likely to prevail on its claim for breach of the cooperation clause. Mot. 17-19. JEA's entire response proceeds from the mistaken premise that "[b]ecause the implied covenant does not support an independent breach of contract claim, neither does the general cooperation clause in Section 1015." Opp. 19. MEAG's motion explained (at 17-18) that MEAG's claim does not rely on the "implied covenant" and that Section 1015 is not a "general cooperation clause" but rather incorporates duties littered throughout the PPA. For this reason too, MEAG is likely to prevail on appeal.

### 2. **The equities heavily favor enjoining JEA.**

Finally, under any standard, the equities heavily favor enjoining JEA from proceeding with duplicative litigation while the appeal is pending.

JEA argues there is "no risk of irreparable harm to MEAG" because there will be duplicative litigation only if MEAG prevails on appeal. Opp. 7-9. JEA never disagrees that forcing MEAG to litigate the Florida Action while the appeal is pending will harm MEAG if it prevails on appeal. JEA's argument is that JEA believes that *it* will prevail on appeal. MEAG has already explained why that is wrong. For purposes of balancing the equities, it is sufficient that JEA does not dispute that MEAG will suffer irreparable harm should MEAG prevail on appeal.

Next, JEA argues that its risk of injury is greater than the risk MEAG faces because "payments under a potentially void public contract are an exceedingly high

13

injury." Opp. 9. JEA cites no case holding that two sophisticated parties continuing to perform under a bargained-for contract while the propriety of the contract is being litigated constitutes an irreparable injury—nor could JEA make such an argument as it has not moved for a preliminary injunction to relieve it of its contractual obligations while the litigation is ongoing. In exchange for JEA's payments, it continues to maintain its share of Project J in return; that is not an injury.

JEA also argues that an injunction would "sideline and muzzle" it if the City of Jacksonville could continue with the Florida Action while an injunction is pending. Opp. 10. JEA could easily avoid that harm by asking the Florida court to stay the action. Nor would a temporary injunction cause any irreparable harm to the City. *Id*. The City is not a party to the PPA and has no independent claim in the case; a short delay before the parties to the contract resume their litigation causes the City no harm.

JEA concludes by asserting that the "public interest would be disserved by an injunction." Opp. 11. JEA claims this is so based on the bizarre contention that "[t]here is no paramount public interest in this dispute being heard in Georgia." *Id.* This ignores that construction of the multibillion dollar Vogtle plant *in Georgia* "affect[s] nearly every Georgia ratepayer and many Georgia workers." Mot. 24. It also ignores that the parties agreed that *Georgia* law would govern the dispute, and that a central issue in the case will be "the integrity of three separate bond validation proceedings" in Georgia

14

state court that JEA hopes to "undermine[]." *Id.* The only public harms that JEA identifies, meanwhile, are that "the City, JEA, and JEA's ratepayers" will continue to perform under the PPA, and that there are "novel and complex issues" of Florida law. Opp. 11. The former is just another way of saying that JEA will continue to perform under the PPA and receive the benefits of its bargain; the latter are relevant *only after* a Court first considers MEAG's argument under Georgia law. The public interest here continues to favor this case—over a Georgia construction project, governed by a contract that selects Georgia law and a Georgia forum—being heard in Georgia.

## CONCLUSION

This Court should grant the motion for an emergency injunction pending appeal.

Respectfully submitted this 28th day of June, 2019.

        */s/ Rebecca Woods*
        Rebecca Woods
        Georgia Bar No. 942321
        Seth Fortin
        Georgia Bar No. 759830
        SEYFARTH SHAW LLP
        1075 Peachtree Street, N.E., Suite 2500
        Atlanta, Georgia   30309-3962
        Telephone: (404) 885-1500
        Facsimile: (404) 892-7056

        Michael Levinson
        (*pro hac application* to be filed)
        SEYFARTH SHAW LLP
        233 South Wacker Drive, Suite 8000
        Chicago, Illinois 60606-6448
        Phone: (312) 460-5000
        Fax: (312) 460-7000

        *Counsel for Plaintiff Municipal Electric Authority of Georgia*

## **CERTIFICATE OF COMPLIANCE**

Undersigned counsel certifies the foregoing document has been prepared with one of the font and point selections (Times New Roman, 14-point) approved by the Court in local rule 5.1(C) and 7.1(D).

By: */s/ Rebecca Woods*
Rebecca Woods
Georgia Bar No. 942321

*Counsel for Plaintiff Municipal Electric Authority of Georgia*

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| MUNICIPAL ELECTRIC AUTHORITY OF GEORGIA,<br><br>   Plaintiff,<br><br> v.<br><br>JEA,<br><br>   Defendant. | Case No. 1:18-cv-4295-MHC |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **REPLY SUPPORTING PLAINTIFF'S *EMERGENCY* MOTION TO RE-OPEN CASE, AND FOR AN INJUNCTION PENDING APPEAL** has been filed with the Clerk of Court using the CM/ECF system and will send notification to all counsel of record.

This 28th day of June, 2019.

            SEYFARTH SHAW LLP

      By: */s/ Rebecca Woods*
         Rebecca Woods
         Georgia Bar No. 942321

         *Counsel for Plaintiff Municipal Electric Authority of Georgia*

18